# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASON MARCUS JONES,

      Plaintiff

v.

CHIEF OF POLICE, et. al.,

      Defendants

Case No.: 3:19-cv-00650-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 5, 22, 23, 24

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff has filed an application to proceed in forma pauperis (IFP) (ECF No. 22) and pro se complaint (ECF No. 5). He has also filed a motion for emergency temporary restraining order (TRO) (ECF No. 23), and a motion requesting copies of his legal documents (ECF No. 24).[1]

## I. BACKGROUND

Plaintiff, who is a detainee at the Washoe County Detention Facility (WCDF), filed an application for leave to proceed IFP on October 25, 2019. (ECF No. 1.) It was not accompanied by a complaint, or the required financial certificate. On November 8, 2019, Plaintiff filed his complaint. (ECF Nos. 5, 5-1.) He also filed a motion for appointment of counsel (ECF No. 6), and motions for a preliminary injunction or TRO (ECF Nos. 7, 8).

---

[1] These documents are identical, but were docketed separately by the Clerk's Office because of the different relief sought.

On December 13, 2019, the court issued an order directing the Clerk to send Plaintiff a copy of instructions and application to proceed IFP for an inmate, and gave Plaintiff 30 days to file his completed financial certificate or pay the full $400 filing fee. The court advised him that once this was done, the court would screen his complaint under 28 U.S.C. § 1915(e)(2)(B) or 28 U.S.C. § 1915A, or both. He was warned that a failure to timely file the completed financial certificate or pay the filing fee would result in dismissal of this action. (ECF No. 9.)

On January 31, 2020, Plaintiff had not filed his financial certificate; therefore, the court issued an order dismissing this action *without prejudice* and denied his outstanding motions as moot in light of the dismissal of the case. (ECF No. 11.)

Plaintiff appealed. (ECF No. 12.) The Ninth Circuit vacated the undersigned's order at ECF No. 11, and remanded for further proceedings, finding that all parties did not consent to proceed before the magistrate judge. The Ninth Circuit stated, however, that on remand, the district judge may treat the magistrate judge's order as a report and recommendation. (ECF No. 16.)

On July 6, 2020, Plaintiff filed a new application to proceed IFP along with his financial certificate. (ECF No. 22.) He also filed a motion requesting an emergency TRO preventing further injury or death to him (ECF No. 23), and a request for copies of all of his legal documents (ECF No. 24).

## II. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of  the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

1     Plaintiff's certified account statement indicates that his average monthly balance for the

2  last six months was $20.44, and his average monthly deposits were $44.33.

3     Plaintiff's application to proceed IFP should be granted. Plaintiff is required to pay an

4  initial partial filing fee in the amount of $8.86 (20 percent of $44.33). Thereafter, whenever his

5  prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the

6  preceding month's income credited to his account until the $350 filing fee is paid.

7                              **III. SCREENING**

8  **A. Standard**

9     Under the statute governing IFP proceedings, "the court shall dismiss the case at any time

10  if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal--

11  (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii)

12  seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

13  § 1915(e)(2)(A), (B)(i)-(iii).

14     In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if

15  feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in

16  which a prisoner seeks redress from a governmental entity or officer or employee of a

17  governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify

18  cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

19  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

20  monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

21     Dismissal of a complaint for failure to state a claim upon which relief may be granted is

22  provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and

23  28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a

complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

    **1. Defendants**

    Plaintiff's complaint names as defendants: John Doe Chief of Police; Sheriff Darin Balaam; John and Jane Doe NaphCare Employees; RCSU Detective Scott Rasmussen at Reno Police Department; RCSU Detective Cragg; RCSU Detective J. Kincaid; Reno Police Department Officers D. Lafrance, Stockwell, Mario Reza, Hanna, and A. Franzwa, Deputies C. Lewis, Pineda, Millard, and Dr. Frank.

    **2. General Allegations**

    Plaintiff alleges that he got a call from his ex-girlfriend to do him a favor, and in exchange she would give his personal belongings back to him. He was to be dropped off at Meadowood Mall. She picked him up with her "S.E.T. -T.E.A.M." employees (he did not know at the time that these were the people with her), and four minutes later, a Reno Police Department car, S.E.T.-T.E.A.M. vehicles, and a Sparks Police Department car pulled them over. His ex-girlfriend immediately said, "I got 2 ounces on me" and she "snitched." Then, three of the four S.E.T.-T.E.A.M. members snatched him out of the car, causing physical and emotional injuries.

    Plaintiff claims he did nothing wrong and was not read his Miranda rights before they began to question him. He asked for medical attention several times, and his requests were denied. He asked what he did, and was told that he and "Mario" did something, and that he would be better off telling them where Mario was. He told them, "all I've done was get high with him, I don't know him." He avers that his ex-girlfriend gave them his password and they texted Mario. Then, one officer stole two things out of his wallet and phone that Officer Stockwell did

not log in with the rest of his personal belongings. He continued to ask for medical attention, and his requests were denied. (ECF No. 5 at 3, 6.)

When he arrived at the WCDF, he asked Stockwell where the driver of the truck was (i.e., his ex-girlfriend) because they had told him the truck would be towed and she would be taken to jail, but that did not happen. He subsequently called her, and avers that he discovered she was a confidential informant.

**3. Section 1983**

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). To state a claim under section 1983, a plaintiff must allege: (1) his or her civil rights were violated, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983). The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017) (citing *Albright*, 510 U.S. at 271). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id*. (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

**4. Claim 1**

In Claim 1, Plaintiff first cites the Double Jeopardy Clause, his right against self-incrimination, the Due Process Clause, the right to be free from cruel and unusual punishment, his right to medical treatment, as well as his right to equal protection of the laws. (ECF No. 5 at 8.)

**a. Double Jeopardy**

"[T]he Double Jeopardy Clause protects against three distinct abuses: [1] a second prosecution for the same offense after acquittal; [2] a second prosecution for the same offense after conviction; and [3] multiple punishments for the same offense." *United States v. Chick*, 61 F.3d 682, 686 (9th Cir. 1995) (citation and quotation marks omitted, alteration original).

Plaintiff references the Double Jeopardy Clause several times, but provides no factual allegations to indicate that Double Jeopardy comes into play here, and fails to connect any alleged double jeopardy violation to a particular defendant. This claim should be dismissed with leave to amend.

**b. Coercive Interrogation: *Miranda*, the Fifth Amendment, the Fourteenth Amendment and Substantive Due Process**

The Fifth Amendment provides: "No person … shall be compelled in any criminal case to be a witness against himself…." U.S. Const. amend. V. This right against self-incrimination was addressed by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966) and held: "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.

In *Chavez v. Martinez,* 538 U.S. 760 (2003), the Supreme Court faced a Fifth Amendment claim by a former criminal suspect under section 1983. Martinez asserted that the police failed to give him any *Miranda* warnings and then interrogated him under coercive conditions. Martinez made incriminating statements, but was never charged with a crime. He brought suit under section 1983, asserting a violation of his Fifth Amendment right not to be compelled to be a witness against himself, and the Fourteenth Amendment substantive due process right to be free from coercive questioning. *Chavez,* 538 U.S. at 764-65.

The Supreme Court held in a set of opinions that Martinez could not allege a violation of his Fifth Amendment right when "Martinez was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case." *Id*. at 766 (Thomas J, joined by Rehnquist, C.J., O'Connor, J., and Scalia, J.); *id.* at 777-78 (describing "the core of the guarantees against compelled self-incrimination" as "the exclusion of any such evidence" and declining to "expand protection of the privilege … to the point of [ ] civil liability" in the absence of a more "powerful showing" that the conduct at issue placed this "core guarantee, or the judicial capacity to protect it," at risk) (Souter, J., joined by Breyer, J.). The Court held, however, that unlawful police interrogation techniques may give rise to a substantive due process claim under the Fourteenth Amendment, but "the Fifth Amendment was not violated unless and until allegedly coerced statements were used against the suspect in a criminal case." *Stoot v. Everett,* 582 F.3d 910, 923 (9th Cir. 2009) (citing *Chavez*, 538 U.S. at 773 (plurality opinion of Thomas J.), 779 (Souter. J.), 787 (Stevens, J.), 799 (Kennedy, J.)).

In *Stoot v. Everett*, the Ninth Circuit considered what "sort of 'use' in a 'criminal case' [ ] gives rise to a Fifth Amendment violation." *Stoot*, 582 F.3d at 923. "[A] 'criminal case' at the very least requires the initiation of legal proceedings,' but" the Supreme Court "did not decide

1   'the precise moment when a 'criminal case' commences'" because Chavez never faced criminal

2   charges. *Id*. (citing *Chavez*, 538 U.S. at 776-67). In *Stoot*, the statements were used in "(1) the

3   Affidavit filed in support of the information charging him with child molestation; (2) a pretrial

4   arraignment and bail hearing (the CrR 3.2 hearing); and (3) a pretrial evidentiary hearing (the

5   CrR 3.5 hearing) to determine the admissibility of his confession." *Id*. at 923-24. The Ninth

6   Circuit held that the use of the statements in the affidavit filed in support of the information

7   charging him and at the pretrial arraignment and bail hearing  constituted "use" in a "criminal

8   case" under *Chavez*. *Id*. at 924 (noting a disagreement between the Third, Fourth, and Fifth

9   Circuits that limit recovery under the Fifth Amendment to cases where the coerced statements

10  were admitted against the defendant at *trial*, on the one hand, and the Seventh and Second

11  Circuits, where the statements were used at a preliminary hearing and to set the amount of bail

12  before the charges were ultimately dropped (Seventh Circuit), and as the basis for filing a

13  criminal complaint and opposing bail before charges were withdrawn (Second Circuit), on the

14  other hand). *Id*. at 925.

15      The Ninth Circuit specifically held: "A coerced statement has been "used" in a criminal

16  case when it has been relied upon to file formal charges against the declarant, to determine

17  judicially that the prosecution may proceed, and to determine pretrial custody status." *Id*. The

18  Ninth Circuit reasoned that "[s]uch uses impose precisely the burden precluded by the Fifth

19  Amendment: namely, they make the declarant a witness against himself in a criminal

20  proceeding." *Id*. Use of the statement at trial is not necessary to assert a claim for a violation of

21  the Fifth Amendment. *Id*.

22      Here, Plaintiff has not alleged sufficient facts regarding the interrogation that took place

23  after he claims he was not Mirandized. He does not indicate whether or how any allegedly

coerced statements were used against him in a criminal case. Nor does he include facts that would give rise to a substantive due process claim. Importantly, Plaintiff does not include facts that connect an alleged constitutional violation to any particular defendant. Therefore, any Fifth and Fourteenth Amendment claims in Claim 1 should be dismissed with leave to amend.

### c. Medical Treatment

Third, Plaintiff references the right to be free from cruel and unusual punishment as well as the right to medical treatment.

Insofar as Plaintiff is alleging the denial of adequate medical care when he was a pretrial detainee at WCDF, his claim is covered by an objective standard under the Fourteenth Amendment, and not the Eighth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The elements of such a claim are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Id*. "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. at 1125 (citation and quotation marks omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*. (citation and quotation marks omitted).

To the extent Plaintiff is asserting a denial of medical care after his arrest, but before he arrived at the detention facility, district courts within the Ninth Circuit have held that law

enforcement officers are required to provide objectively reasonable post-arrest care under the Fourth Amendment. *See Neuroth v. Mendocino County,* No. 15-cv-03226-RS, 2018 WL 418957 (N.D. Cal. Aug. 31, 2018); *Borges v. County of Eureka,* No. 15-cv-00846-YGR, 2017 WL 363212, at *6 (N.D. Cal. Jan. 25, 2017).

For either claim, post-arrest or when he was a pre-trial detainee, Plaintiff does not set forth sufficient *factual* allegations to state a claim against any defendant. Plaintiff states that he was denied adequate medical care, and that he had X-rays 50 days late and was denied an MRI, but provides no other factual allegations related to his claims. Importantly, he also fails to connect any factual allegations to a particular defendant.

For these reasons, his denial of medical care claim(s) should be dismissed with leave to amend.

### d. Equal Protection

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const.  amend XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, where state action does not implicate a protected class, a plaintiff can establish a "class of one" equal protection claim by demonstrating that he

1  "has been intentionally treated differently form others similarly situated and that there is no

2  rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562,

3  564 (2000).

4       Plaintiff includes no facts to support an equal protection claim in relation to his arrest and

5  detention at WCDF.[2] Therefore, this claim should be dismissed, but with leave to amend.

6      **5. Claim 2**

7       In claim 2, Plaintiff states that there was no need for excessive force by the RCSU team.

8  He also briefly mentions the denial of medical treatment (which was already addressed in

9  connection with Claim 1). Next, he asserts that there was an illegal "stacking of charges" to get

10  Plaintiff to plead to one of the offenses, which he asserts constitutes "excessive bail" and cruel

11  and unusual punishment. He also references the Double Jeopardy Clause again. (ECF No. 5 at 9-

12  10.)

13        **a. Excessive Force**

14       Claims of excessive force during an arrest or other seizure of a free citizen are evaluated

15  under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v.*

16  *Connor*, 490 U.S. 386, 395 (1989). ); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th

17  Cir. 2005) (en banc) ("A Fourth Amendment claim of excessive force is analyzed under the

18  framework outlined by the Supreme Court in *Graham v. Connor*."). This analysis "requires a

19  careful balancing of 'the nature and quality of the intrusion on the individual's Fourth

20  Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490

21  U.S. at 396 (internal quotation marks and citation omitted). The question is "whether the

22

23

   [2] His claim that his equal protection rights were violated when he was discriminated against for being Jewish are discussed, *infra*.

officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

them, without regard to their underlying intent or motivation." *Id*. at 397 (citations omitted).

Plaintiff's only allegation is that he was taken out of the vehicle with excessive force, as

well as subsequent references to "police brutality." Plaintiff does not include any *factual*

allegations regarding the alleged use of excessive force by describing the circumstances

surrounding the use of force, whether and what type of injuries he sustained, and importantly,

what role the defendant(s) played in the alleged excessive force. Therefore, this claim should be

dismissed with leave to amend.

**b. Eighth Amendment**

"The opening clause of the Eighth Amendment, 'Excessive bail shall not be required,' is

one of the least litigated provisions in the Bill of Rights." *Galen v. City of Los Angeles*, 477 F.3d

652, 659 (9th Cir. 2007), as amended (citation omitted). The Supreme Court and Ninth Circuit

have assumed, without deciding, that the Excessive Bail Clause is incorporated against the

States. *Id.* (citing *Baker v. McCollan*, 443 U.S 137 (1979)). "[T]he Excessive Bail Clause

prevents the imposition of bail conditions that are excessive in light of the valid interests the state

seeks to protect by offering bail." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987)).

Plaintiff includes no facts that support a claim of excessive bail under the Eighth

Amendment. Therefore this claim should be dismissed; however, Plaintiff should be given leave

to amend.

Nor does Plaintiff otherwise state a claim under the Eighth Amendment's prohibition

against cruel and unusual punishment. His claims concerning medical care were addressed

above, under the Fourth and Fourteenth Amendments.

### c. Double Jeopardy

Again, Plaintiff includes insufficient facts to show that double jeopardy is at play here. The court incorporates its analysis above regarding the double jeopardy claim in Claim 1, and recommends dismissal of this claim with leave to amend.

### 6. Claim 3

In claim 3, Plaintiff references the Free Exercise Clause of the First Amendment, which he alleges protects his right to practice his religion, including eating proper kosher food, covering his hair, and praying or eating at the appropriate time. He also cites the Establishment Clause of the First Amendment as well. Finally, he cites the Fourteenth Amendment as prohibiting discrimination on the basis of his being Jewish. He avers that he is not provided with a proper Kosher diet, head dressing, and Torah, but is being given Jell-O, which he claims contains pork. He further asserts that he is not given adequate meals on the Sabbath so that he is able to fast. He also avers that he is denied Jewish services or a rabbi. (ECF No. 5 at 11.)

### a. First Amendment Free Exercise Clause and Establishment Clause

"The First Amendment, … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab*., 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted). "A substantial burden … place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id*. at 1031-32 (quotation marks and citation omitted).

1    "The right to exercise religious practices does not terminate at the prison door. The free

2    exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed

3    in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v.*

4    *Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also Jones*, 791 F.3d at 1032

5    (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) ("The challenged conduct 'is

6    valid if it is reasonably related to legitimate penological interests.'").

7    In *Ashelman v. Wawraszek*, 111 F.3d 675 (9th Cir. 1997), the Ninth Circuit held that

8    Jewish inmate had the right to a kosher diet, explaining that "in the case of dietary restrictions,

9    the inmate had no alternative means of exercising the right, whereas there were 'obvious, easy

10    alternatives' that the prison could implement." *Jones*, 791 F.3d at 1033 (citing *Ashelman*, 111

11    F.3d at 678).

12    Plaintiff would state a claim for violation of the Free Exercise Clause; however, he does

13    not direct his allegations toward the conduct of any particular defendant. Therefore, the Free

14    Exercise Clause claim should be dismissed with leave to amend.

15    "The Establishment Clause, applicable to state action by incorporation through the

16    Fourteenth Amendment, …, states that 'Congress shall make no law respecting an establishment

17    of religion.'" *Hartmann*, 707 F.3d at 1125 (citing U.S. Const. amend. I). "The clause 'means at

18    least' that '[n]either a state nor the Federal Government … can pass laws which aid one religion,

19    aid all religions, or prefer one religion over another.'" *Id.* (quoting *Everson v. Bd. of Educ. of*

20    *Ewing Twp.,* 330 U.S. 1, 15 (1947)). The clause applies to official condonement of a particular

21    religion or religious belief, and to official disapproval or hostility towards religion. *American*

22    *Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120-21 (9th Cir. 2002)

23    (citation omitted). "[A] state policy need not be formal, written, or approved by an official body

to qualify as state sponsorship of religion, but the actions complained of must be sufficiently imbued with the state's authority to constitute endorsement of religion. *Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998).

Plaintiff must include additional facts to state a claim for violation of the Establishment Clause, *i.e.*, how prison officials aided one religion or preferred one religion over another so as to demonstrate government endorsement of a particular religion. Therefore, this claim should be dismissed with leave to amend.

### b. Equal Protection

Plaintiff might state an equal protection claim based on the allegation that he is being treated differently because he is Jewish; however, Plaintiff does not connect the alleged unconstitutional conduct to the action of any particular defendant. Therefore, this claim should be dismissed with leave to amend.

### 7. Personal Property

Plaintiff briefly mentions the confiscation of his personal property in connection with his arrest.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. In addition, the Fourteenth Amendment, applicable to states by the Fifth Amendment, provides: "No State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977).

Plaintiff does not include sufficient factual allegations, and does not adequately connect allegations to a particular defendant, to state a property claim under the Fourth or Fourteenth Amendments. Therefore, to the extent Plaintiff seeks to assert such a claim, it should be dismissed with leave to amend.

**8. Supervisory Liability**

Plaintiff names as defendants the John Doe Chief of Police and Sheriff Balaam, and J. Kincaid, because they were the supervisors of other officers or deputies.

"'Under section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*. (quoting *Hansen*, 885 F.2d at 646).

The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley v. Bannister,* 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen*, 885 F.2d at 646) (internal quotation marks omitted).

Plaintiff does not include sufficient factual allegations to state a claim against the Doe Chief of Police, Sheriff Balaam, or Kincaid. Therefore, his claims against them should be dismissed with leave to amend.

## IV. MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

In his motion, Plaintiff states that he is dealing with systematic racism, police brutality, and harassment at the hands of his "oppressor" at the WCDF. He states that he has been assaulted three more times, causing injuries to his back, hip and left ankle, and that they threw his legal documentation away in both his civil and criminal cases.

In seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015) (adopting the rule from *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district

court lacks authority to grant the relief requested." *Id.* This is because "[a] court's equitable power lies only over the merits of the case or controversy before it." *Id.* at 633.

"Though new assertions of misconduct might support additional claims against a defendant, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint."

Here, the court has recommended dismissing all of the claims in Plaintiff's complaint with leave to amend; however, none of those claims have a sufficient nexus to the bare assertions made in the motion for an emergency TRO. Like the complaint, Plaintiff's motion for TRO also fails to sufficiently connect any alleged unconstitutional conduct to a particular defendant. Therefore, Plaintiff's motion for an emergency TRO should be denied.

Plaintiff is advised that the purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources*

*Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Plaintiff's motion did not address any of the criteria required to demonstrate he is entitled to injunctive relief. Plaintiff may choose to include additional claims addressing the subject of his motion for TRO when he files his amended complaint; however, those claims must contain sufficient factual allegations and must connect the alleged unconstitutional conduct to the actions of a particular defendant. Moreover, any future motion for TRO or preliminary injunction must be related to claims proceeding in this action, and must address the criteria discussed above.

## V. REQUEST FOR COPIES OF LEGAL DOCUMENTS

Plaintiff asserts that "they" threw his legal documentation away in his civil and criminal cases, and he requests copies of all his legal documents.

This motion should be granted to the extent the Clerk's Office should be directed to send Plaintiff a copy of his complaint (ECF No. 5) filed in this action. To the extent he seeks copies of documents from his criminal case or in other civil cases, he will have to address those concerns in the specific cases.

## VI. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **GRANTING** Plaintiff's IFP application (ECF No. 22); however, Plaintiff is required to pay, through NDOC, an initial partial filing fee in the amount of $8.86, within thirty days of the entry of any order adopting and accepting this Report and Recommendation. Thereafter,

whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350 filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a copy of an order adopting and accepting this Report and Recommendation to the attention of **Chief of Inmate Services for the Washoe County Detention Facility:** 911 East Parr Blvd., Reno, NV 89512.

(2) **DISMISSING t**he complaint (ECF No. 5) **WITH LEAVE TO AMEND**. Plaintiff should be given **30 days** from the date of any order accepting and adopting this Report and Recommendation to file an amended complaint. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the amended pleading  as "AMENDED COMPLAINT." Plaintiff should be advised that if he fails to file an amended complaint within the 30 days, the action may be dismissed.

(3) **DENYING** his motion for an emergency TRO (ECF No. 23).

(4) **GRANTING** his request for copies of his legal documents (ECF No. 24) to the extent the Clerk's Office should be directed to send Plaintiff a copy of his complaint (ECF No. 5) filed in this action.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

1  Report and Recommendation" and should be accompanied by points and authorities for

2  consideration by the district judge.

3       2. That this Report and Recommendation is not an appealable order and that any notice of

4  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

5  until entry of judgment by the district court.

6

7  Dated: July 10, 2020

8                                          _William G. Cobb_____

                                           William G. Cobb
9                                          United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23