# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASON MARCUS JONES,

    Plaintiff

v.

CHIEF OF POLICE SATO, et. al.,

    Defendants

Case No.: 3:19-cv-00650-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 27

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Plaintiff, who is a detainee at the Washoe County Detention Facility (WCDF), filed an application to proceed in forma pauperis (IFP) (ECF No. 1) and pro se complaint (ECF No. 1-1). The court issued a report and recommendation on July 10, 2020, recommending that: his IFP application be granted and he be required to pay the $350 filing fee over time; his complaint be dismissed with leave to amend; his emergency motion for temporary restraining order (TRO) be denied; and, that his request for a copy of his complaint be granted. (ECF No. 25.) No objection was filed, and District Judge Du accepted and adopted the report and recommendation. (ECF No. 26.) Plaintiff filed his first amended complaint (FAC) on August 6, 2020 (ECF No. 27), which the court now screens.

# I. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*,

395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's FAC**

**1. Summary of Allegations**

Plaintiff's FAC names as defendants: Chief of Police Sato, Sheriff Darin Balaam, John and Jane Doe Naphcare employees, RCSU Detective J. Kincaid, RCSU Detective Scott Rasmussen, Deputy C. Lewis, Deputy Millard, Patrol Officer Stockwell, Patrol Officer D. LaFrance, Patrol Officer or Detective Mario Reza, Patrol Officer Hanna, Patrol Officer A. Franzwa, N.P. Frank, Deputy Reed, Deputy Doyle, and DRT Deputy Gurd. In addition, the following individuals are identified in the body of the FAC, but not listed as defendants, though

1  it appears Plaintiff intends to proceed against them: Dr. Ivarte, Nurse Wendy, Sergeant Barrett-

2  Venn, Chaplain J. Wynn, and John Doe RCSU members.

3          Plaintiff alleges that his ex-girlfriend is a paid confidential informant for the RCSU. He

4  claims that she texted him on Facebook messenger at the request of her handler, J. Kincaid, to set

5  Plaintiff up for crimes. She texted him saying she wanted to give his belongings back, when she

6  knew that another confidential informant had taken his things. Plaintiff agreed to be picked up at

7  Meadowood Mall. His ex-girlfriend picked him up there, and they started driving and a Reno

8  Police Department officer and a Sparks Police Officer and six other Set-Team vehicles pulled

9  them over, stating the basis for the stop was bad insurance. Plaintiff claims this was a lie,

10  because he had paid the insurance and the tags were still good. His ex-girlfriend immediately

11  said, "I've got 2 ounces of dope on me." Plaintiff said, "well it ain't mine." Kinkaid and two other

12  John Doe RCSU members snatched him out of the car and with force such that his ankle hit the

13  curb and "busted it up." He asked for medical attention and was denied. He asked what they were

14  handcuffing him for, and one officer said, "what did you and Mario do?"

15          Plaintiff claims he was not read his Miranda rights before they started questioning him,

16  and Plaintiff informed them that the only thing he ever did with Mario was "get high."

17          They put his items in the police car, including his wallet, and claims that they stole

18  something out of it.

19          Kinkaid said all parties were going to be arrested, and he went to Plaintiff's ex-girlfriend

20  and got Plaintiff's passcode for his phone, and then one of the officers texted Mario. Plaintiff

21  claims this was entrapment and they kept his phone illegally to make an arrest against Mario.

22

23

He asserts that Chief Sato was not supposed to allow convicted felons to "work under his watch" or be paid. Plaintiff goes on to allege that he started to write a book, and the jail threw it away.

As he did in the original complaint, the FAC then makes reference to double jeopardy, coercive interrogation and his Miranda rights.

In Claim 1, Plaintiff lists the Fifth, Eighth, and Fourteenth Amendments. He alleges he is being subjected to double jeopardy because of the arrest report Scott Rasmussen and Jacob Kinkaid "constructed" and false statements made by "that illegal immigrant" to officers Reza, Hanna and A. Franzwa. He says this caused him to have excessive bail when they intentionally "stacked" charges against him.

He states that Officer Stockwell stole his phone and the RCSU team used it to make an arrest.

Next, he alleges denial of proper medical treatment by Dr. Ivarte[1], NP Frank, Nurse Wendy and other Naphcare employees for over 154 days. He states that X-rays were done 50-plus days later and an MRI only after Dr. Preston ordered them from Renown wound care.

In Claim 2 Plaintiff references the Fifth and Fourteenth Amendments. He is a pretrial detainee who has had to go to the hospital 11 times due to lack of adequate medical care by Dr. Ivarte and Naphcare employees. He claims he is supposed to be in an ADA cell because of the use of a walker due to the injury but this was denied by Sergeant Barrett-Venn and Dr. Ivarte. He contends that Dr. Ivarte has continued to fail to comply with follow up orders as he refuses to send him back to his digestive health doctor, or his wound care doctor.

---

[1] It is difficult to read Plaintiff's handwriting, but this appears to be how he spells the name of the identified doctor. Plaintiff may file a notice correcting the name if the court has mis-read the name.

Claim 3 references the First and Fourteenth Amendments. Plaintiff states that the Fourteenth Amendment prohibits the denial of equal protection of the laws because he is Black and Jewish. He was on a Kosher diet and claims that chaplain J. Wynn took him off of it, indicating Chaplain Wynn does not believe he is Jewish. He also states that the WCDF has not held one Jewish service since he has been there.

Finally, he alleges that due to Sergeant Andrew Barrett-Venn, all of his legal papers were confiscated and thrown away with everything else of his for filing a grievance.

**2. Excessive Force & Denial of Medical Care by Law Enforcement**

Plaintiff alleges that Kinkaid and two other John Doe RCSU members took him out of the car with such force that his ankle hit the curb and "busted it up," and then they denied him medical attention for his injuries.

**a. Excessive Force**

Claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) ("A Fourth Amendment claim of excessive force is analyzed under the framework outlined by the Supreme Court in *Graham v. Connor*.").

Liberally construed, Plaintiff states a colorable Fourth Amendment excessive force claim against Kinkaid and the two John Doe RCSU members. Plaintiff should be allowed to proceed against the two John Doe RCSU officers once he has identified them, and within the parameters of any applicable scheduling order deadlines for amendment or addition of parties.

**b. Request for Medical Attention**

District courts within the Ninth Circuit have held that law enforcement officers are required to provide objectively reasonable post-arrest care under the Fourth Amendment. *See Neuroth v. Mendocino County*, No. 15-cv-03226-RS, 2018 WL 418957 (N.D. Cal. Aug. 31, 2018); *Borges v. County of Eureka*, No. 15-cv-008460YGR, 2017 WIL 363212, at *6 (N.D. Cal. Jan. 25, 2017).

Liberally construed, Plaintiff states a colorable claim against Kinkaid and the two John Doe RCSU officers for denial of medical care during his arrest. Again, he should be able to proceed against the John Doe RCSU officers once he has identified them, and within the parameters of any scheduling order deadline for amendment or the addition of parties.

**3. Fifth & Fourteenth Amendments-Miranda and Coercive Interrogation**

Plaintiff once again alleges that he was not read his Miranda warnings before officers started questioning him.

The Fifth Amendment provides, "No person … shall be compelled in any criminal case to be a witness against himself…." U.S. Const. amend V. This right against self-incrimination was addressed by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966) and held: "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444.

In *Chavez v. Martinez*, 538 U.S. 760 (2003), the Supreme Court faced a Fifth Amendment claim for a former criminal suspect under section 1983. Martinez asserted that police failed to give him any *Miranda* warnings and then interrogated him under coercive conditions. Martinez made incriminating statements, but was never charged with a crime. He

brought suit asserting violation of his Fifth Amendment right not to be compelled to be a witness against himself, and the Fourteenth Amendment substantive due process right to be free from coercive questioning. *Chavez*, 538 U.S. at 764-65.

The Supreme Court held in a set of opinions that Martinez could not allege a violation of his Fifth Amendment right when he "was never prosecuted for a crime, let alone compelled to be a witness against himself in a criminal case." *Id.* at 766 (Thomas J., joined by Rehnquist, C.J., O'Connor, J., and Scalia, J.); *id.* at 777-78 (describing "the core of the guarantees against compelled self-incrimination" as "the exclusion of any such evidence" and declining to "expand the protection of the privilege … to the point of [ ] civil liability" in the absence of a more "powerful showing" that the conduct at issue placed this "core guarantee, or the judicial capacity to protect it," at risk) (Souter, J., joined by Breyer, J.). The Court held, however, that unlawful police interrogation techniques may give rise to a substantive due process claim under the Fourteenth Amendment, but "the Fifth Amendment was not violated unless and until allegedly coerced statements were *used against the suspect in a criminal case." Stoot v. Everett*, 582 F.3d 910, 923 (9th Cir. 2009) (emphasis added) (citing *Chavez*, 538 U.S. at 733 (plurality opinion of Thomas, J., 779 (Souter, J.), 787 (Stevens, J.), 799 (Kennedy, J.)).

In *Stoot*, the Ninth Circuit considered what "sort of 'use' in a 'criminal case' [ ] gives rise to a Fifth Amendment violation." *Stoot*, 582 F.3d at 923. "[A] 'criminal case' at the very least requires the initiation of legal proceedings,' but" the Supreme Court "did not decide 'the precise moment when a 'criminal case' commences'" because Chavez never faced criminal charges. *Id.* (citing *Chavez*, 538 U.S. at 766-67). In *Stoot*, the statements at issue were used in "(1) the Affidavit filed in support of the information charging him …; (2) a pretrial arraignment and bail

1   hearing (the CrR 3.2 hearing); and (3) a pretrial evidentiary hearing (the CrR 3.5 hearing) to

2   determine the admissibility of his confession." *Id.* at 923-34.

3        The Ninth Circuit held that the use of the statements in the affidavit filed in support of the

4   information charging him and at the pretrial arraignment and bail hearing constituted "use" in a

5   "criminal case" under *Chavez*. *Id*. at 934 (noting a disagreement between the Third, Fourth, and

6   Fifth Circuits that limit recovery under the Fifth Amendment to cases where the coerced

7   statements were admitted against the defendants *at trial*, on the one hand, and the Seventh and

8   Second Circuits, where the statements were used at a preliminary hearing and to set the amount

9   of bail before charges were ultimately dropped (Seventh Circuit), and as the basis for filing a

10  criminal complaint and opposing bail before charges were withdrawn (Second Circuit), on the

11  other hand). *Id.* at 925.

12       The Ninth Circuit specifically held: "A coerced statement has been "used" in a criminal

13  case when it has been relied upon to file formal charges against the declarant, to determine

14  judicially that the prosecution may proceed, and to determine pretrial custody status." *Id.* Use of

15  the statement at trial is not necessary to assert a claim for violation of the Fifth Amendment. *Id*.

16       *Chavez* held that allegations of coercive interrogation can be brought as a substantive due

17  process claim under the Fourteenth Amendment. *See Chavez*, 538 U.S. at 733 (plurality opinion

18  of Thomas, J.), 779 (Souter, J.), 787 (Stevens, J.), 799 (Kennedy, J.)). "The standard for showing

19  a Fourteenth amendment substantive due process violation, however, is quite demanding." *Stoot*,

20  582 F.3d at 928 (noting the reference in *Chavez* to "police torture or other abuse" and Justice

21  Kennedy's reference to "torture or its close equivalents"). "'[O]nly the most egregious official

22  conduct can be said to be 'arbitrary in the constitutional sense' and therefore a violation of

23  substantive due process." *Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846

(1998)). "[A] Fourteenth Amendment claim of this type is cognizable only if the alleged abuse of power 'shocks the conscience' and 'violates the decencies of civilized conduct.'" *Id.* (quoting *Lewis*, 523 U.S. at 846). In *Stoot*, the court concluded that interrogation techniques that allegedly involved improper promises and threats to a child fell short of what is required for a substantive due process claim based on coercive interrogation. *Id.* at 929.

Like the original complaint, Plaintiff does not allege that the any statements he made in response to questioning after allegedly not being Mirandized were used against him in a criminal case in any manner. Nor has Plaintiff alleged facts sufficient to state a Fourteenth Amendment claim for coercive interrogation. As Plaintiff has already had an opportunity to amend, the Fifth and Fourteenth Amendment claims should be dismissed with prejudice.

### 4. Property

Plaintiff alleges that Stockwell and another officer stole his property.

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Those who seek to invoke due process protections must establish that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005). Where an inmate alleges a deprivation of property interest caused by the unauthorized, negligent or intentional action of an official, he does not state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zimmerman v. Burch*, 494 U.S. 113, 129-32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Nevada provides a meaningful post-deprivation remedy for the loss of personal property. *See* Nev. Rev. Stat. §41.041, 41.0322.

Here, Plaintiff alleges that Officer Stockwell and another unidentified officer "stole" his property. The court construes this as asserting that the officers' conduct was intentional.

1  Therefore, the constitutional Fourteenth Amendment due process claim should be dismissed with

2  prejudice as Plaintiff has an adequate post-deprivation remedy.

3        In addition, he asserts that he was writing a book, and it was thrown away by the jail. He

4  does not connect this allegation to any particular defendant; therefore, this property claim should

5  be dismissed. Since he has already had an opportunity to amend, the dismissal should be with

6  prejudice.

7        **5. Double Jeopardy & Fabrication of Evidence**

8        Like the original complaint, Plaintiff references the Double Jeopardy Clause without

9  including factual allegations to indicate that the clause is applicable to him. Therefore, this claim

10  should be dismissed, and the dismissal should be with prejudice as he has already had an

11  opportunity to amend.

12        Plaintiff's double jeopardy claim is based on allegations Scott Rasmussen and Jacob

13  Kinkaid "constructed," and false statements "that illegal immigrant" made to officers Reza,

14  Hanna and A. Franzwa. The court construes this instead as asserting a fabrication of evidence

15  claim against Rasmussen, Kinkaid, and an unidentified person as Plaintiff does not allege that

16  Reza, Hanna or Franzwa made false statements, but instead alleges only that they were the

17  recipients of false statements.

18        In *McDonough v. Smith*, 139 S.Ct. 2149 (2019), the Supreme Court assumed, without

19  deciding, that a fabrication of evidence claim is grounded in the Fourteenth Amendment. 139

20  S.Ct. at 2155 (citation omitted). A fabrication of evidence claim requires allegations that the

21  defendant deliberately fabricated evidence which caused the deprivation of liberty. *Id.* at 2156;

22  *see also Spencer v. Peters*, 857 F.3d 789, 798 9th Cir. 2017). The Supreme Court held that such a

23

1  claim accrues only when "the criminal proceeding has ended in the defendant's favor, or a

2  resulting conviction has been invalidated[.]"

3      Plaintiff has not asserted that the criminal proceeding has ended in his favor, or that any

4  resulting conviction has been invalidated. Therefore, the fabrication of evidence claim should be

5  dismissed. The dismissal should be without prejudice so that Plaintiff may raise it in the event

6  the criminal proceedings end in his favor or any resulting conviction is invalidated.

7      **6. Excessive Bail**

8      Plaintiff states that there was excessive bail because of stacked charges.

9      The Eighth Amendment provides that "[e]xcessive bail shall not be required" for pretrial

10  release. U.S. Const. amend VIII. The Supreme Court and Ninth Circuit have assumed, without

11  deciding, that the Excessive Bail Clause of the Eighth Amendment is incorporated against the

12  States. *Galen v. City of Los Angeles*, 477 F.3d 652, 659 (9th Cir. 2007), *as amended* (citing

13  *Baker v. McCollan*, 443 U.S. 137 (1979)).

14      "[T[he Excessive Bail Clause prevents the imposition of bail conditions that are excessive

15  in light of the valid interests the state seeks to protect by offering bail." *Galen*, 477 F.3d at 660

16  (citing *U.S. v. Salerno*, 481 U.S. 739, 754 (1987)). A plaintiff seeking to state a claim under the

17  Excessive Bail Clause must allege that his or her bail was enhanced for purposes unauthorized

18  by the law, or that the bail conditions are excessive for the purpose of achieving "the valid state

19  interests for which bail is intended to serve for a particular individual." *Id.* "The plain meaning of

20  'excessive bail' does not require that it be beyond one's means, only that it be greater than

21  necessary to achieve the purposes for which bail is imposed." *Id.* at 661 (citations omitted).

22      Here, Plaintiff does not include allegations that his bail was enhanced for an unauthorized

23  purpose, or that his bail conditions are excessive when compared to the state interests asserted

against him. Therefore, his Excessive Bail Clause claim should be dismissed; and because he has already had an opportunity to amend, this claim should be dismissed with prejudice.

### 7. Retaliation

Plaintiff alleges that Sergeant Andrew Barrett-Venn confiscated his legal papers for filing a grievance.

Liberally construed, Plaintiff states a colorable retaliation claim against Sergeant Barrett-Venn. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citation omitted) ("The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities[.]").

### 8. Denial of Medical Care at WCDF

A denial of adequate medical care by a pretrial detainee is covered by an objective standard under the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The elements of such a claim are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at a substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* "The mere lack of due care by a state official does not deprive an individual of life, liberty or property under the Fourteenth Amendment." *Id.* at 1125 (citation and quotation marks omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (citation and quotation marks omitted).

13

Plaintiff alleges that he was denied proper medical treatment by Dr. Ivarte and NP Frank, as well as Nurse Wendy and other Naphcare employees for over 154 days. He states x-rays were done 50-plus days later, and an MRI, only after Dr. Preston had ordered it from Renown Wound Care 154 days later. He states that as a detainee he had to go to the hospital 11 times due to lack of adequate medical care by Dr. Ivarte and Naphcare employees.

He states that he is supposed to be in an ADA cell with  a bar because of the use of a walker, and this was denied by Sergeant Barrett-Venn and Dr. Ivarte. He asserts that he has significant injury and pain. He claims he was refused a cat-scan for over 6 months. He further avers that he was denied seeing a specialist even though he had a referral. He mentions he has been diagnosed with a cardiac issue, and states that the medical care has been incompetent or inadequate due to Naphcare not having a system in place for timely reviews. He claims that Dr. Ivarte has continued to fail to send him back to his digestive health doctor, or wound care doctor.

Plaintiff should be allowed to proceed with his claim of denial/delay of adequate medical care against Dr. Ivarte based on allegations that his imaging needs were unnecessarily delayed, and that he has been denied or delayed appointments with specialists.

Plaintiff should also be allowed to proceed with his claim of denial/delay of adequate medical care against Dr. Ivarte and Sergeant Barrett-Venn to the extent he alleges they denied him necessary access to an ADA accessible cell because he utilizes a walker.

NP Frank, Nurse Wendy, and the unidentified Naphcare employees should be dismissed without prejudice as Plaintiff does not include any allegations regarding their role in the denial or delay of health care. Plaintiff may move to amend when he learns the identities and roles of these

1  defendants, within the parameters of the Federal Rules of Civil Procedure and any applicable

2  scheduling order deadlines concerning amendment and the addition of parties.

3           **9. Equal Protection, First Amendment Free Exercise, Establishment Clause**

4           Plaintiff references the equal protection clause, and then asserts that he is Black and

5  Jewish. He claims that Chaplain J. Wynn denied him a Kosher diet, implying that Wynn did not

6  believe he was Jewish. In addition, he asserts that there has only been one Jewish service since

7  he has been at WCDF.

8                        **a. Equal Protection**

9           The Fourteenth Amendment prohibits the denial of the equal protection of the laws. U.S.

10  Const. amend XIV, § 1. It "commands that no State shall deny to any person within its

11  jurisdiction the equal protection of the laws, which is essentially a direction that all persons

12  similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

13  2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

14           "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment

15  from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

16  Prisoners are also protected by the Equal Protection Clause from intentional discrimination on

17  the basis of their religion. *See Freeman v. Arpaio,* 125 F.3d 732, 737 (9th Cir. 1997) (citation

18  omitted), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir.

19  2008). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of

20  the Fourteenth Amendment a plaintiff must showed that the defendants acted with an intent or

21  purpose to discriminate against the plaintiff based upon membership in a protected class."

22  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152

23  F.3d 1193, 1194 (9th Cir. 1998)).

1    Here, while Plaintiff includes general references to systemic racism, he does not include

2    any factual allegations indicating that he was intentionally treated differently because of his race.

3    In addition, while he says he was denied his Kosher meal and that there has not been one Jewish

4    service since he has been at WCDF, he does not include allegations that indicate he was treated

5    differently due to his religion. In fact, he does not include any allegations regarding how others

6    were treated compared to how he was treated. Therefore, his equal protection claim should be

7    dismissed; and because he has had an opportunity to amend, the dismissal should be with

8    prejudice.

9    **b. Free Exercise Clause**

10    "The First Amendment, … prohibits government from making a law prohibiting the free

11    exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir.

12    2013) (citations and quotation marks omitted).

13    "A person asserting a free exercise claim must show that the government action in

14    question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d

15    1023, 1031 (9th Cir. 2015) (citation omitted). "A substantial burden … place[s] more than an

16    inconvenience on religious exercise; it must have a tendency to coerce individuals into acting

17    contrary to their religious beliefs or exert substantial pressure on an adherent to modify his

18    behavior and to violate his beliefs." *Id.* at 1031-32 (quotation marks and citation omitted).

19    "The right to exercise religious practices does not terminate at the prison door. The free

20    exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed

21    in other to achieve legitimate correctional goals or to maintain prison security." *McElyea v.*

22    *Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also Jones*, 791 F.3d at 1030

23

16

1  (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)) ("The challenged conduct 'is

2  invalid if it is reasonably related to legitimate penological interests.'").

3      In *Ashelman v. Wawraszek*, 111 F.3d 675 (9th Cir. 1997), the Ninth Circuit held that a

4  Jewish inmate had the right to a Kosher diet, explaining that "in the case of dietary restrictions,

5  the inmate had no alternative means of exercising the right, whereas there were 'obvious, easy

6  alternatives, that the prison could implement." *Jones*, 791 F.3d at 1033 (citing *Ashelman*, 111

7  F.3d at 678).

8      Plaintiff states a colorable Free Exercise Clause claim against Chaplain J. Wynn based on

9  the allegations that he was denied Kosher meals as well as Jewish religious services.

10                     **c. Establishment Clause**

11      "The Establishment Clause, applicable to state action by incorporation through the

12  Fourteenth Amendment, …, states that 'Congress shall make no law respecting an establishment

13  of religion.'" *Hartmann*, 707 F.3d at 1125 (citing U.S. Const. amend. I.) "The clause 'means at

14  least' that '[n]either a state nor the Federal Government … can pass laws which aid one religion,

15  aid all religions, or prefer one religion over another.'" *Id.* (quoting *Everson v. Bd. of Educ. of

16  Ewing Twp.*, 330 U.S. 1, 15 (1947)). The clause applies to official condonement of a particular

17  religion or religious belief, and to official disapproval or hostility towards religion. *American

18  Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1120-21 (9th Cir. 2002)

19  (citation omitted). "[A] state policy need not be formal, written, or approved by an official body

20  to qualify as a state sponsorship of religion, but the actions complained of must be sufficiently

21  imbued with the state's authority to constitute endorsement of religion. *Canell v. Lightner*, 143

22  F.3d 1210, 1214-15 (9th Cir. 1998).

23

Plaintiff has not included allegations as to how any defendant condoned a particular religion or religious belief, or disapproved another. Therefore, his Establishment Clause claim should be dismissed; and because he has already had an opportunity to amend, the dismissal should be with prejudice.

### 10. Seizure of the Phone

Plaintiff alleges that they improperly got into his phone through his ex-girlfriend giving the passcode, and they improperly used it to text Mario and arrest him. He states that Officer Stockwell stole the phone and then used it to arrest Mario without his consent.

The court construes this as a Fourth Amendment unlawful seizure claim. The Ninth Circuit has held that "a §1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned." *Harvey v. Waldron*, 110 F.3d 1008, 1015 (9th Cir. 2000), *overruled in part on other grounds by Wallace v. Kato,* 549 U.S. 384, 393-394 (2007).

The cellphone is related to Plaintiff's arrest, and Plaintiff has not alleged that his criminal charges were dismissed. Therefore, this claim should be dismissed, but the dismissal should be without prejudice so that Plaintiff may raise the claim in the event the charges are dismissed or any subsequent conviction is invalidated.

### 11. Other Defendants

The only allegation against Chief Sato is that he was not supposed to allow convicted felons to work under his watch. This is not a basis for a constitutional claim.

Plaintiff includes no allegations or does not state a cognizable claim against the other defendants referenced in the complaint.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) Allowing Plaintiff to **PROCEED** with the following claims:

A. The Fourth Amendment excessive force and denial of medical attention claims against Kinkaid and two John Doe RCSU members. Plaintiff should be allowed to proceed against the two John Doe RCSU officers once he has identified them, and within the parameters of any applicable scheduling order deadlines for amendment or addition of parties;

B. The retaliation claim against Sergeant Andrew Barrett-Venn;

C. The denial/delay of adequate medical care claim against Dr. Ivarte based on Plaintiff's allegations that his imaging needs were unnecessarily delayed and he has been denied/delayed care and appointments with specialists, as well as the denial/delay of medical care claim against Dr. Ivarte and Sergeant Barrett-Venn to the extent Plaintiff alleges they denied him necessary access to an ADA cell because he utilizes a walker;

D. The First Amendment Free Exercise Clause claim against Chaplain J. Wynn based on allegations that he was denied Kosher meals as well as Jewish services; and

(2) **DISMISSING** the following claims and defendants:

A. The Fifth Amendment Miranda and Fourteenth Amendment coercive interrogation claims **WITH PREJUDICE**;

B. The Fourteenth Amendment due process claims that Officer Stockwell and another officer stole his property **WITH PREJUDICE**;

C. The Fourteenth Amendment due process claim that an unidentified person at the jail threw away his book **WITH PREJUDICE**;

D. The Double Jeopardy Claim **WITH PREJUDICE**;

E. The fabrication of evidence claim against Rasmussen, Kinkaid, Reza, Hanna, Franzwa, and an unidentified individual **WITHOUT PREJUDICE**;

F. The Eighth Amendment Excessive Bail Clause claim **WITH PREJUDICE**;

G. NP Frank, Nurse Wendy , and unidentified Naphcare employees from Plaintiff's denial/delay of medical care claims **WITHOUT PREJUDICE** as there are no allegations connecting these defendants to any alleged unconstitutional conduct. Plaintiff should be allowed to move to amend when he learns the identities and roles of these defendants, within the parameters of Federal Rule of Civil Procedure 15, and any applicable scheduling order deadlines concerning amendment and adding parties;

H. The Fourteenth Amendment equal protection claim **WITH PREJUDICE**;

I. The First Amendment Establishment Clause claim **WITH PREJUDICE**;

J. The Fourth Amendment unlawful seizure of his phone claim **WITHOUT PREJUDICE**;

K. Chief Sato should be dismissed **WITH PREJUDICE** as there are no allegations that give rise to a constitutional claim and Plaintiff has already been given leave to amend;

L. Sheriff Darin Balaam, C. Lewis, Millard, Reed, Doyle and Gurd should also be **DISMISSED WITH PREJUDICE** as there are no allegations concerning these defendants in the FAC, and Plaintiff has already been given leave to amend.

(3) If this Report and Recommendation is adopted, the Clerk should be directed to **ISSUE** summonses for each of the defendants and send the same to the U.S. Marshal. The Clerk should also be directed to **SEND** sufficient copies of the complaint and this order to the U.S. Marshal for service on the defendants. The Clerk should be directed to **SEND** to plaintiff sufficient USM-285 forms. Plaintiff should be given **14 days** to complete the USM-285 service forms and return

them to the U.S. Marshal for service, 400 S. Virginia Street, 2nd Floor, Reno, Nevada 89501. If Plaintiff should be advised that if fails to follow the order, the defendants will be dismissed for failure to complete service of process under Federal Rule of Civil Procedure 4(m). Within **20 days** of receiving from the U.S. Marshal a copy of the USM-285 form showing whether service has been accomplished, if any of the defendants were not served, and if Plaintiff wants service to be attempted again, he must file a motion with the court providing a more detailed name and/or address for service, or indicating that some other method of service should be attempted. Plaintiff should be reminded that under Federal Rule of Civil Procedure 4(m), service must be completed within **90 days** of the date of the order.

Plaintiff should be further advised that if Plaintiff should require additional time to meet deadlines set by this court, he must file a motion for an extension of time in accordance with Local Rule 26-4. If he requires an extension of time to effectuate service, the motion must be supported by good cause and shall be filed *before* the expiration of the ninety-day period.

Finally, once service is accomplished, Plaintiff should be directed to serve a copy of every pleading, motion or other document submitted for consideration by the court upon the defendants or, if an appearance has been entered by counsel, upon the attorney. Plaintiff must include with the original of each document to be filed with the court a certificate stating that a true and correct copy of the document was mailed to the defendant or counsel. The court may disregard any paper received which has not been filed with the Clerk, or that fails to include a certificate of service.

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: August 28, 2020

William G. Cobb
United States Magistrate Judge