UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JASON M. JONES,

                    Plaintiff,

v.

JACOB KINCAID,

                    Defendant.

Case No. 3:19-cv-00650-MMD-WGC

ORDER

## I.   SUMMARY

*Pro se* Plaintiff Jason Marcus Jones, who is now incarcerated in the custody of the Nevada Department of Corrections ("NDOC") (ECF Nos. 77, 79), brings this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights when he was a pretrial detainee at the Washoe County Detention Facility ("WCDF"). (ECF No. 27.) Before the Court are a motion to dismiss filed by Defendant Dr. Ituarte[1] (ECF No. 47),[2] three motions for summary judgment filed by all Defendants (ECF Nos. 59, 60, 61), and Plaintiff's motion for an extension of time *nunc pro tunc* to respond to the pending summary judgment motions (ECF No. 78).[3] As further explained below, the Court will deny Defendant Dr. Ituarte's motion to dismiss as moot, but grant his motion for summary judgment because Plaintiff failed to exhaust his administrative remedies. In

---

[1]He clarified that his name is spelled Dr. Eloy Ituarte, though it is currently listed on the docket as 'Dr. Ivarte.' (ECF No. 47 at 1.) Plaintiff previously filed a notice consistent with this spelling. (ECF No. 33.) The Court will refer to him as Dr. Ituarte and direct the Clerk of Court to update the docket accordingly.

[2]Plaintiff never responded to this motion, though Dr. Ituarte filed a reply. (ECF No. 58.)

[3]As further explained *infra*, Plaintiff filed an untimely, combined response to all three motions (ECF No. 69), and an unauthorized surreply (ECF No. 75). All Defendants filed replies in support of their motions for summary judgment. (ECF Nos. 71, 73, 74.)

addition, the Court will deny Defendant Kincaid's[4] motion for summary judgment because he failed to meet his initial burden to show no disputes of material fact remain on Plaintiff's claim against him, and his argument overlooks the fact that Plaintiff filed a verified complaint. The Court will grant the remaining Defendants' summary judgment motion as to Plaintiff's claims against Barrett-Venn and Wynn, but deny it as to Lewis, because disputes of material fact remain about how he handled Plaintiff's Torah and why he subsequently locked Plaintiff down. The Court will also grant Plaintiff's motion for extension of time *nunc pro tunc* and consider the combined response he filed to all three summary judgment motions.

## II.    BACKGROUND

The operative complaint in this case is Plaintiff's First Amended Complaint (ECF No. 27 ("FAC")). Plaintiff's FAC is a verified complaint. (*Id.* at 16.) The Court mostly adopted the Report and Recommendation of United States Magistrate Judge William G. Cobb (ECF No. 28) in an order (ECF No. 34) that dismissed some of Plaintiff's attempted claims in his FAC as part of the screening process required by the Prison Litigation Reform Act ("PLRA") and allowed others to proceed. Specifically, Plaintiff is proceeding on five claims against Defendants also specified below:

1. A Fourth Amendment excessive force and denial of medical attention claims against Kincaid and two John Doe RCSU (Regional Crime Suppression Unit) members.

2. A First Amendment retaliation claim against Barrett-Venn.

3. A First Amendment retaliation claim against Lewis.

4. An Eighth Amendment denial/delay of adequate medical care claim against Dr. Ituarte.

---

[4]His name is currently listed on the docket at Kinkaid, but both Defendant Jacob Kincaid (ECF No. 60 at 1) and Plaintiff (ECF No. 33) have clarified that his name is spelled Jacob Kincaid. The Court will refer to him as Kincaid in this order and direct the Clerk of Court to update the spelling of his name on the docket.

5.  A First Amendment Free Exercise Clause claim against Wynn.

(ECF No. 34 at 6-7.) Dr. Ituarte moved to dismiss, and then moved for summary judgment on claim 4. (ECF Nos. 47, 61.) Kincaid moved for summary judgment on claim 1. (ECF No. 60.) The remaining Defendants moved for summary judgment on the remaining claims. (ECF No. 59.)

Meanwhile, Plaintiff was apparently convicted of and sentenced for the offense or offenses that brought him to WCDF and moved to the Northern Nevada Correctional Center ("NNCC") in November 2020. (ECF No. 79 at 1.) He says he notified the Court at the time (*id.*), but the Clerk of Court did not receive a change of address notification from him until May 10, 2021 (*id.*), after the Court issued two minute orders directing him to file a change of address notification or face dismissal (ECF Nos. 66, 76). While Plaintiff missed the deadline set in the first minute order (ECF No. 66), the Court gave Plaintiff another chance because he was filing other documents from NNCC (ECF Nos. 68, 69, 75), so the Court inferred he was still trying to prosecute his case. (ECF No. 76.) He timely complied with the second order.

Per the scheduling order entered in this case, discovery expired on February 4, 2021, and dispositive motions were due by March 8, 2021. (ECF No. 52.) Defendants filed their motions for summary judgment on the dispositive motion deadline. (ECF Nos. 59, 60, 61.) The next day, the Court issued a minute order warning Plaintiff about the potential impact of Defendants' motions for summary judgment, and what Plaintiff must do to successfully oppose them. (ECF No. 62.) But Plaintiff: (1) never responded to Dr. Ituarte's motion to dismiss; and (2) missed the deadlines to respond to the three motions for summary judgment. As to the summary judgment motions, Plaintiff filed an untimely combined response (ECF No. 69), and an unauthorized, untimely surreply (ECF No. 75). These issues are further discussed *infra*.

## III.  LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (citation omitted).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

Plaintiff is proceeding *pro se*. (ECF Nos. 37, 45 (denying motion for appointment of counsel).) Courts must consider a *pro se* party's contentions offered in motions and pleadings as evidence in opposition to a motion for summary judgment "where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [he] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). But "[a] district court does not have a duty to search for evidence that would create a factual dispute." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

## IV.    DISCUSSION

The Court first addresses several preliminary issues, and then addresses each of the three pending motions for summary judgment, with its analysis structured to map to the five claims that survived the Court's screening analysis. The Court's analysis *infra* is significantly influenced by the fact that Plaintiff's FAC is verified, meaning the Court must treat those of his allegations that are based on personal knowledge and could be admissible as evidence as evidence when evaluating Defendants' summary judgment motions. (ECF No. 27 at 16 (swearing under penalty of perjury that his allegations are true).) *See also Jones*, 393 F.3d at 923. Thus, the Court cannot reflexively grant the pending summary judgment motions even though Plaintiff filed an untimely, combined response to all three motions containing very little argument and no citations to evidence. *See also* LR 7-2(d) (excepting motions for summary judgment from the rule that failure to file points and authorities in response to a motion constitutes consent to granting that motion).

### A.    Preliminary Issues

Plaintiff's failure to update his address and timely respond to Defendants' motions creates several preliminary issues the Court must resolve before addressing the merits of Defendants' motions. The first is whether to consider Plaintiff's untimely combined response to Defendants' motions for summary judgment in ruling on those motions. In

his motion for extension of time filed at the Court's prompting (ECF No. 78), Plaintiff requests an extension of time because he is incarcerated during the COVID-19 pandemic and because he does not have an attorney (*id.*). Given the extraordinary circumstances created by the COVID-19 pandemic, particularly for incarcerated people, the Court finds this sufficient cause to grant the motion. Moreover, public policy favors resolving cases on their merits. *See, e.g.*, *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (noting the "the public policy favoring disposition of cases on their merits" as one of the factors courts must consider before deciding to dismiss a case for lack of prosecution) (citations omitted). The Court will accordingly consider Plaintiff's belated, combined response (ECF No. 69) in ruling on Defendants' summary judgment motions.

But the Court will not consider Plaintiff's unauthorized and untimely surreply regarding these motions. (ECF No. 75.) "Surreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." LR 7-2(b). Plaintiff did not seek or obtain the Court's leave before filing his surreply. Moreover, considering Plaintiff's surreply would be unfair to Defendants, who have not had an opportunity to respond to it. And the Court has already been exceedingly lenient with Plaintiff in declining to dismiss this case for failure to update his address in compliance with the local rules and considering Plaintiff's untimely opposition to Defendants' summary judgment motions. The Court will therefore direct the Clerk of Court to strike Plaintiff's surreply (ECF No. 75) for noncompliance with LR 7-2(b). *See also Bias*, 508 F.3d at 1223 (finding the district court did not abuse his discretion in declining to consider the plaintiff's untimely surreplies filed without first obtaining the Court's leave in violation of the applicable local rules).

Plaintiff's failure to respond to Dr. Ituarte's motion to dismiss may also have contributed to some redundancy as to that motion. Dr. Ituarte's motion to dismiss seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 47.) Dr. Ituarte then makes the same argument in his motion for summary judgment.

(ECF No. 61 at 22-25.) As noted, Plaintiff did not file a response to the motion to dismiss, seek an extension of time to respond to the motion to dismiss, or otherwise seek leave to file an untimely response.[5] But because, as further explained *infra*, the Court will grant Dr. Ituarte's motion for summary judgment, the Court will deny Dr. Ituarte's motion to dismiss (ECF No. 47) as moot.

Finally, the Court permitted Plaintiff to proceed on his Fourth Amendment excessive force claim against two John Doe RCSU Officers along with Kincaid. (ECF No. 34 at 6.) The Court's order stated, "Plaintiff may also proceed against the two John Doe RCSU officers once he has identified them, and within the parameters of any applicable scheduling order deadlines for amendment or addition of parties." (*Id.*) However, Plaintiff has not filed anything regarding these John Doe officers since then, and discovery closed on February 4, 2021. (ECF No. 52.) Plaintiff has therefore had an opportunity to pursue discovery to determine their identity, but the Court cannot say whether he availed himself of that opportunity. He is also no longer in compliance with the Court's prior order, which granted him leave to pursue claims against them subject to the Court's scheduling order. (ECF Nos. 34 at 6, 52.) In the interest of allowing this case to proceed smoothly, the Court will dismiss the two John Doe RCSU officers from this case without prejudice.

///

///

///

---

[5]Dr. Ituarte asks the Court to grant the motion as unopposed. (ECF No. 58 at 2.) Dr. Ituarte's counsel also notes that he called Plaintiff and explained to him how important it was to respond to the motion after Plaintiff confirmed that he had received it. (*Id.* at 1; *see also* ECF No. 58-1 at 2.) The Court commends Dr. Ituarte's counsel's effort. And, indeed, the Court could grant Dr. Ituarte's motion to dismiss as unopposed. *See* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion."). However, the Court finds it more equitable to consider and rule on Dr. Ituarte's motion for summary judgment because Plaintiff filed a response to that motion—which, as explained *supra*, the Court will consider even though it is untimely.

### B. Fourth Amendment Excessive Force and Denial of Medical Care Claim against Kincaid

Kincaid's arguments in his motion—including his argument that he is entitled to qualified immunity—all flow from the premise that Plaintiff has not uncovered any evidence that Kincaid used force against him. (ECF No. 60 at 6-11.) Plaintiff offers little in response, merely stating that all Defendants are not entitled to qualified immunity (ECF No. 69 at 1), and that they did not meet their summary judgment burden under Fed. R. Civ. P. 56 to demonstrate no genuine issues of material fact (*id.* at 3). Kincaid replies by pointing to the preliminary issues with Plaintiff's response addressed *supra*, noting Plaintiff's failure to substantively respond to Kincaid's argument, and reiterating that Plaintiff lacks evidence to establish that Kincaid used force against him, much less the unreasonable force required to prove a Fourth Amendment violation and parry the shield of qualified immunity. (ECF No. 74.)

However, Kincaid's argument overlooks the allegations in Plaintiff's verified FAC. There, Plaintiff states that Kincaid "used police brutality against me, when he as well as a few other officers snatched me out of Shellina's Expedition while still in my seat-belt, and the force, like a rubber-band caused my ankle to smack against the curb causing injury to my ankle and refused me medical treatment[.]" (ECF No. 27 at 2; *see also id.* at 7 (containing similar allegations), 16 (making the FAC verified).) Plaintiff would have personal knowledge of what happened to him, and facts like whether Kincaid pulled him out of the car, whether he injured his ankle, the amount of force Kincaid used against him, and whether Kincaid refused Plaintiff medical treatment are all the sort of facts that could be established through admissible evidence. Thus, the Court must treat this excerpt from Plaintiff's FAC as evidence for purposes of ruling on Kincaid's motion. *See Jones*, 393 F.3d at 923.

Moreover, Kincaid does not proffer affirmative evidence tending to show he did not use any force on Plaintiff, much less any affirmative evidence establishing that any force he used was not excessive. He proffers the police reports he prepared after the

fact, but they do not mention whether and how much force he used on Plaintiff. (ECF No. 60-2 at 3-4.) Kincaid also does not state in the police reports that he provided Plaintiff with medical care. (*Id.*) Nor does Kincaid offer a sworn declaration in support of his motion. The Court accordingly concludes disputes of material fact preclude summary judgment in Kincaid's favor as to whether and how much force Kincaid used on Plaintiff, and whether Plaintiff requested, and whether Kincaid refused to provide, Plaintiff with medical care.

In addition, claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005) (en banc) ("A Fourth Amendment claim of excessive force is analyzed under the framework outlined by the Supreme Court in *Graham v. Connor*."). The Court cannot say whether Kincaid applied objectively reasonable force to Plaintiff based on the evidence currently before the Court. As stated, Plaintiff's verified FAC states that Kincaid applied unreasonable amounts of force to Plaintiff—in noting that Kincaid subjected him to 'police brutality' and causing his ankle to smack against the sidewalk by pulling him out of a car when his seatbelt was still on. (ECF No. 27 at 2.) And Kincaid does not proffer any evidence showing how much force he used. It would thus be inappropriate to determine that Kincaid's actions were objectively reasonable at this stage of the proceedings.

The same goes for qualified immunity. While the Court acknowledges the general preference for resolving the application of qualified immunity earlier in a case, the Court cannot say whether Kincaid is entitled to qualified immunity before first determining what happened. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("The parties dispute some facts necessary to decide the issue of qualified immunity on excessive force."). Moreover, qualified immunity cannot protect Kincaid if he did use excessive force on Plaintiff and then decline him medical care. *See id.* ("The Fourth Amendment requires police officers making an arrest to use only an amount of force that

is objectively reasonable in light of the circumstances facing them."). And the right to be free from excessive force during arrest has been well established for some time. *See id.*; *see also id.* at 481 ("force is only justified when there is a need for force."). Deciding that qualified immunity protects Kincaid against Plaintiff's excessive force claim at this stage would be inappropriate given the dispute of material fact precluding summary judgment on the merits of Plaintiff's claim.

In sum, the Court will deny Kincaid's motion for summary judgment.

### C.    Retaliation Claim Against Sergeant Andrew Barrett-Venn

Plaintiff alleges that Barrett-Venn retaliated against him by confiscating his legal papers for filing a grievance. (ECF Nos. 28 at 13, 34 at 6.) The five basic elements of a first amendment retaliation claim in the prison context are: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted).

While Barrett-Venn concedes that filing a grievance is protected conduct, he argues he is entitled to summary judgment on this claim because the four other factors weigh in his favor. (ECF No. 59 at 8-13.) As discussed *supra* as to Plaintiff's excessive force claim, Plaintiff only generally responds that all Defendants have neither met their summary judgment burden, nor are they entitled to qualified immunity. (ECF No. 69.) In Plaintiff's verified FAC, Plaintiff states, "[b]ut due to Sgt Andrew Barrett-Venn all my legal paper was confiscated and thrown away with everything else of mine for filing grievances[.]" (ECF No. 27 at 13.) As further explained *infra*, the Court agrees with Barrett-Venn that he is entitled to summary judgment on this claim.

To start, Barrett-Venn met his initial summary judgment burden by proffering an entirely different explanation for why Plaintiff's property was thrown out, supported by authenticated evidence, establishing that Barrett-Venn did not confiscate Plaintiff's legal

papers in retaliation for filing a grievance. (ECF No. 59 at 3-4; *see also* ECF Nos. 59-4, 59-5, 59-11.) Specifically, Barrett-Venn offers a sworn declaration supported by a nearly contemporaneous report explaining that Plaintiff had a medical emergency on March 30, 2020, where he vomited multiple times in his cell and had to be rushed to the hospital. (ECF Nos. 54-11 at 2, 54-4 at 2-3 (report authored by Michael Hoekstra less than a month after the incident).) Supervisor Hoekstra sent a cleaning team into Plaintiff's cell while he was gone to clean the vomit, and they inadvertently threw out all of Plaintiff's belongings including his legal papers, in the process. (ECF No. 54-4 at 2-3.) Barrett-Venn states that he did not direct anyone to throw out Plaintiff's belongings and was not aware it had happened until about mid-April. (ECF No. 54-11 at 2.) But once he learned about the incident, Barrett-Venn tried to help Plaintiff replace his belongings and go through the process to request reimbursement for those items that could not be replaced. (*Id.*; *see also* ECF No. 54-5.) Barrett-Venn's statements regarding his lack of involvement or even awareness of the incident are corroborated by Supervisor Hoekstra's report, where Supervisor Hoekstra states that he ordered that others clean Plaintiff's cell. (ECF No. 54-4 at 2-3.) Thus, Barrett-Venn has proffered evidence sufficient to establish that he did not take adverse action against Plaintiff, much less because Plaintiff filed a grievance.

And Plaintiff does not come forward with any contrary evidence. (ECF No. 69.) Moreover, the Court is not required to treat Plaintiff's mention of this incident in his verified FAC as evidence because it does not state facts that could be admissible in evidence. *See Jones*, 393 F.3d at 923. He primarily states a legal conclusion as to causation—that Barrett-Venn retaliated against him because he filed a grievance. (ECF No. 27 at 13.) His FAC does not contain any factual allegations that elaborate on Plaintiff's conclusory legal allegation, such as when or how Barrett-Venn threw out Plaintiff's legal papers, or what led Plaintiff to believe Barrett-Venn threw them out because he filed a grievance. And Plaintiff's allegations in his FAC do not contradict Barrett-Venn's proffered evidence establishing that he did not take an adverse action

against Plaintiff, much less an adverse action taken because of Plaintiff's protected activity. *See infra.* The Court therefore concludes that Barrett-Venn is entitled to summary judgment on Plaintiff's First Amendment retaliation claim against him.

### D. First Amendment Retaliation Claim Against Deputy Lewis

In contrast, the Court does not find Lewis is entitled to summary judgment on Plaintiff's First Amendment retaliation claim. Unlike the evidence proffered as to Barrett-Venn, Defendants' proffered evidence as to Lewis is generally consistent with Plaintiff's allegation in his FAC, with Lewis' argument basically hinging on his interpretation of what happened, rather than demonstrating Plaintiff's alleged version of events never occurred. (ECF No. 59 at 3, 8-13.)

Plaintiff's allegation in his verified FAC that the Court permitted him to proceed on is that Lewis "Disicreated [sic] my family Torah by un-wrapping it and tossing it around my cell and then locking me down for 24 hrs, because I complained about it." (ECF No 34 at 2 (citing ECF No. 27 at 3).) Lewis states that he unwrapped Plaintiff's Torah during a cell search, and later locked him down for complaining about it, but disputes that his unwrapping the Torah constituted desecration, and explains that he locked Plaintiff down because the way Plaintiff was complaining was disrespectful and violated WCDF regulations. (ECF No. 59-11 at 2.) This creates a material dispute of fact on the causation prong of Plaintiff's retaliation claim. *See Brodheim*, 584 F.3d at 1269 (listing the prongs). Moreover, Plaintiff states that Lewis 'tossed his Torah around my cell,' (ECF No. 27 at 3), while Lewis states that he did not (ECF No. 59-11 at 2). This allegation is a fact that could be established through admissible evidence—whether Lewis tossed around the Torah—so the Court must treat Plaintiff's allegation as evidence. A factual dispute therefore exists as to whether Lewis tossed around Plaintiff's Torah. The dispute is material because it goes to whether Lewis unwrapped the Torah for a legitimate penological purpose and may also shed light on the reasonableness of Plaintiff's complaining that Lewis does not dispute he locked Plaintiff down for.

///

Lewis also argues he is entitled to qualified immunity on this claim. (ECF No. 59 at 14-17.) But Lewis' specific qualified immunity argument also depends on the Court accepting his version of the facts. (*Id.* at 17.) Lewis further points to Plaintiff's lack of evidence but fails to address the verified nature of Plaintiff's FAC. (*Id.*) Thus, like Plaintiff's excessive force claim against Kincaid, the Court finds it inappropriate to resolve the question of whether Lewis is entitled to qualified immunity until it has resolved the material disputes of fact that preclude the Court from granting summary judgment to Lewis on the merits of Plaintiff's claim at this time. *See Blankenhorn*, 485 F.3d at 477 ("The parties dispute some facts necessary to decide the issue of qualified immunity[.]").

In sum, Defendants' motion for summary judgment is denied as to Plaintiff's First Amendment retaliation claim against Lewis.

### E.    Denial/Delay of Adequate Medical Care Claim Against Dr. Ituarte

Plaintiff's claim against Dr. Ituarte is based on his allegations that his imaging needs were unnecessarily delayed, and he has been denied/delayed care and appointments with specialists. (ECF No. 34 at 7.) Among several arguments, Dr. Ituarte argues he is entitled to summary judgment on Plaintiff's claim against him because Plaintiff failed to properly exhaust his administrative remedies before filing suit. (ECF No. 61 at 22-25.) Plaintiff does not specifically respond to this argument (ECF No. 69), nor does he offer any allegations going to exhaustion in his FAC (ECF No. 27). Because the Court is persuaded by Dr. Ituarte's argument that Plaintiff did not properly exhaust his delay/denial of medical treatment claim against Dr. Ituarte, and as further explained below, the Court will grant Dr. Ituarte summary judgment on this basis and declines to address Dr. Ituarte's other arguments.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has interpreted §

1997e(a) as "requir[ing] proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which "demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Proper exhaustion requires "a grievant [to] use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). "[W]hen a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices [for exhaustion purposes] if it alerts the prison to the nature of the wrong for which redress is sought." *Id.* at 1120 (internal quotation marks and citation omitted).

But "[f]ailure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Defendants may meet their burden by "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. Once met, the burden shifts to the incarcerated plaintiff to show that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* Defendants, however, retain "the ultimate burden of proof." *Id.*

Health care services at WCDF are provided by a private company called NaphCare. (ECF No. 61-2 at 1.) Dr. Ituarte is a NaphCare employee who works as the medical director at WCDF. (*Id.*) According to NaphCare's Chief Legal Officer Bradley Cain, there was a medical grievance policy in effect during the time Plaintiff was housed at WCDF. (*Id.*) That policy is called "J-A-10 Grievance Process For Health Care Complaints[,]" (*id.* at 2), and Mr. Cain states that a true and accurate copy was attached to his declaration (*id.*; *see also id.* at 4-16 (the policy)). Mr. Cain further states that NaphCare received a total of five grievances from Plaintiff while Plaintiff was incarcerated at WCDF. (*Id.* at 2.) He attached the grievances to his declaration. (*Id.* at 17-26.)

Dr. Ituarte argues he is entitled to summary judgment on Plaintiff's claim against him because none of Plaintiff's five medical grievances mention Dr. Ituarte or the

1    allegations in this case. (ECF No. 61 at 24.) Thus, Dr. Ituarte argues, Plaintiff failed to
2    exhaust his administrative remedies. (*Id.* at 24-25.)

3        Dr. Ituarte is indeed entitled to summary judgment on Plaintiff's claim against him
4    because he has proffered evidence sufficient to establish that NaphCare had a
5    grievance policy while Plaintiff was housed there, which Plaintiff was aware of and used,
6    but Plaintiff did not use to grieve Dr. Ituarte's medical treatment. (ECF No. 61-2 at 1-16
7    (showing that Naphcare has a policy that Plaintiff was aware of because he filed five
8    grievances), 17-26 (declining to mention Dr. Ituarte or Plaintiff's allegations against
9    him).) *See also Albino*, 747 F.3d at 1166 ("If undisputed evidence viewed in the light
10   most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to
11   summary judgment under Rule 56."). The Court will therefore grant Dr. Ituarte's motion.

12       **F.    First Amendment Free Exercise Clause claim against Chaplain J.
             Wynn**

14       Plaintiff was finally allowed past screening on a First Amendment Free Exercise
15   Clause claim against Wynn based on Plaintiff's allegations that Wynn denied him Kosher
16   meals as well as access to Jewish services. (ECF No. 34 at 7.) Wynn argues he is
17   entitled to summary judgment on this claim because he did authorize Plaintiff to receive
18   Kosher meals, provided Plaintiff with a Torah, and would have permitted him to attend
19   any Jewish religious service he wanted to, provided Plaintiff contacted a Rabbi and had
20   the Rabbi come to WCDF consistent with WCDF policy. (ECF No. 59 at 4, 14.) Wynn
21   supports this argument with a sworn declaration and entries from WCDF's inmate
22   correspondence system. (ECF Nos. 59-7, 59-8, 58-9, 58-13.) Again, Plaintiff does not
23   specifically respond to Wynn's argument. (ECF No. 69.) In his FAC, Plaintiff alleges that
24   Wynn took Plaintiff off a Kosher diet. (ECF No. 27 at 12.) Plaintiff further alleges that
25   "[t]he Washoe County Sheriffs Offices has not held 1 Jewish service since I've been
26   here[.]" (*Id.*) The Court agrees with Wynn that he is entitled to summary judgment on this
27   claim.
28   ///

Even drawing all inferences in Plaintiff's favor, Wynn has proffered sufficient evidence to demonstrate there is no dispute of material fact on Plaintiff's Free Exercise claim. Wynn's proffered evidence shows that he did put Plaintiff on a Kosher diet. (ECF No. 59-13; *see also* ECF Nos. 59-7 at 5 (confirming that Wynn would put Plaintiff on a Kosher diet), 9 (confirming Plaintiff was on a Kosher diet), 12 (stating Plaintiff was on a Kosher diet even while Wynn was attempting to verify that Plaintiff was Jewish), 13 (confirming Plaintiff was on Kosher diet), 59-8 at 3 (stating Wynn is trying his best to ensure Plaintiff gets a Kosher diet that meets his needs).) While Plaintiff does appear to have been taken off a Kosher diet eventually, that decision was apparently made by medical staff for medical reasons, not by Wynn. (ECF No. 59-9.) Regardless, this evidence shows Wynn did put Plaintiff on a Kosher diet.

As to services, Wynn states that Plaintiff could have arranged for someone from the outside to preside over a Jewish service at WCDF but did not. (ECF No. 59-13.) This does not contradict Plaintiff's only applicable allegation in his FAC, which is that no Jewish services had been held from the time he arrived there until he filed his FAC. (ECF No. 27 at 12.) Further, Plaintiff offers no allegations in his FAC that the Court could treat as evidence, much less other evidence, tending to show that he attempted to arrange for someone to come give Jewish services at WCDF, but Wynn blocked or interfered with his efforts. And while it would of course be preferable if there was a Rabbi on staff at WCDF to provide services, "[t]he free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in other to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam).

In sum, there is no dispute as to the material facts: Wynn authorized Plaintiff to receive a Kosher diet, and while Plaintiff had the option to arrange for someone from the outside to come administer Jewish services, he did not avail himself of that option. The Court will grant Defendants' summary judgment motion as to Plaintiff's claim against Wynn.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant Dr. Ituarte's motion to dismiss (ECF No. 47) is denied as moot.

It is further ordered that Defendants Barrett-Venn, Lewis, and Wynn's motion for summary judgment (ECF No. 59) is granted as to Plaintiff's claims against Barrett-Venn and Wynn but denied as to Plaintiff's claims against Lewis.

It is further ordered that Defendant Kincaid's motion for summary judgment (ECF No. 60) is denied.

It is further ordered that Defendant Ituarte's motion for summary judgment (ECF No. 61) is granted.

It is further ordered that Plaintiff's motion for an extension of time *nunc pro tunc* to respond to Defendants' summary judgment motions (ECF No. 78) is granted. The Court considered his combined response (ECF No. 69) in ruling on the summary judgment motions.

It is further ordered that the two John Doe RCSU officers (ECF No. 34 at 6) are dismissed from this case without prejudice.

It is further ordered that, for clarity, Plaintiff is now proceeding on: (1) Plaintiff's Fourth Amendment excessive force and failure to provide adequate post-arrest medical care claim against Defendant Kincaid only; and (2) Plaintiff's First Amendment retaliation claim against Defendant Lewis only, based on Plaintiff's allegation that Lewis placed him in lockdown after Plaintiff complained to Lewis, after Lewis unwrapped Plaintiff's Torah while searching his cell.

The Clerk of Court is directed to strike Plaintiff's unauthorized surreply (ECF No. 75).

The Clerk of Court is further directed to change "Kinkaid" on the docket to "Jacob Kincaid."

The Clerk of Court is further directed to change "Dr. Ivarte" on the docket to "Dr. Eloy Ituarte."

DATED THIS 27th Day of May 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE